UNITED STATES

v.

**Airman Christopher S. GOGAS,
United States Air Force.**

**ACM 34210.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 29 June 2000.

Decided 16 May 2001.

Appellate Counsel for Appellant: Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, and Captain Patrick J. Dolan.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colo-

nel Karen L. Manos, and Major Lance B. Sigmon.

Before SCHLEGEL, ROBERTS, and BRESLIN, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Judge:

The appellant was convicted in accordance with his pleas of wrongful use of lysergic acid diethylamide (LSD) on divers occasions and wrongful distribution of LSD, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The sentence adjudged and approved included a bad-conduct discharge, confinement for 18 months, and reduction to E–1. The appellant raises several allegations of error. We affirm, but order administrative correction of the promulgating order.

### Sentencing Evidence

On 27 January 2000, the appellant confessed to law enforcement authorities to using LSD unlawfully on about 20 occasions. Some of these uses were with other active-duty military members and some occurred in a dormitory on McChord Air Force Base (AFB). On one occasion, the appellant reported for duty still feeling the effects of no sleep after ingesting LSD. He also admitted wrongfully distributing LSD on one occasion to two other airmen.

During the sentencing portion of his trial, without objection, the prosecution introduced as evidence in aggravation a stipulation of fact between the prosecution and the defense describing the appellant's offenses. The prosecution also introduced personnel records reflecting the appellant's prior service. Among these records were the appellant's performance reports, including his most recent referral report, reflecting a considerable list of disciplinary infractions and less-than-stellar duty performance. The prosecution introduced two separate records of nonjudicial punishment: one for possessing alcoholic beverages under age and another for failure to go to his place of duty. The prosecution also introduced three letters of reprimand for other minor disciplinary infractions. In addition to these personnel records, the prosecution offered a copy of a letter dated 11 May 2000 from the appellant to his congressman requesting assistance. It is this letter which forms the basis of this allegation of error.

The letter began with the appellant's personal background. He openly admitted that he got mixed up with "the wrong group of people" and started "drinking alcohol and using LSD." He recounted his "journey down the road to self-destruction," and related it to his repeated failure to get to work on time and his other disciplinary infractions.

In the letter he also expressed anxiety about facing a general court-martial for his offenses, and challenged the legal basis for the charges. He admitted writing a statement confessing to his crimes, but said he felt "entrapped" by the agents who questioned him. He argued that the charges were not provable, since there was "only" the testimony of three other witnesses, and no physical evidence. He also complained that the criminal charges had hurt his "image at work," that he was not being allowed to work on aircraft anymore, and that he had been ridiculed and harassed by others.

The trial defense counsel objected to the letter. Defense counsel argued that it was not admissible because it was not a matter in aggravation under Rule for Courts–Martial (R.C.M.) 1001(b)(4) or opinion evidence of rehabilitative potential under R.C.M. 1001(b)(5). He also contended its prejudicial effect outweighed its probative value under Mil.R.Evid. 403. The prosecutor conceded it was not evidence in aggravation but argued the appellant's views in the letter about whether he should be prosecuted for his offenses was evidence of a lack of rehabilitative potential.

The military judge concluded that it was admissible as evidence in aggravation, because it related to the crimes in question, that it was relevant to the appellant's rehabilitative potential, and that the probative value was not outweighed by the danger of unfair prejudice or confusion of the issues. However, the military judge was concerned about the appellant's statement that he was "entrapped," and allegations that he had been subjected to improper treatment before trial. The military judge re-opened the providence inquiry to address these issues. After

questioning, the appellant and trial defense counsel agreed that there were no issues of entrapment or unlawful pretrial punishment. The appellant explained that at the time he wrote the letter, he was unaware of the "technicalities" of the law, but that he had since conferred with his counsel and understood the concepts.

The appellant alleges the military judge erred in considering the letter to his congressman during the sentencing portion of the trial. We find no error.

■ The government may introduce evidence during the sentencing portion of the trial about the facts and circumstances surrounding the offenses. Such evidence is admissible under R.C.M. 1001(b)(4), as evidence in aggravation, since it is directly relating to the offenses. Although often presented through a stipulation of fact, it may also be presented through the testimony of witnesses, or through the accused's own statements. *United States v. Irwin,* 42 M.J. 479, 481–82 (1995); *United States v. Holt,* 27 M.J. 57 (C.M.A.1988); *United States v. Vickers,* 13 M.J. 403, 406 (C.M.A.1982). As a practical matter, facts about the circumstances of the crime may have a bearing on the accused's rehabilitative potential. A court may consider factual matters, such as the number of times the accused committed the crime, the deliberateness of it, the motivation behind it, and other circumstances, as evidence bearing on an accused's potential for rehabilitation.

Evidence in aggravation may also include evidence of the impact of the accused's offenses on the mission, discipline, or efficiency of the command immediately resulting from the appellant's offenses. R.C.M. 1001(b)(4).

■ We review a military judge's ruling on the admissibility of evidence for an abuse of discretion. *United States v. Becker,* 46 M.J. 141, 143 (1997); *United States v. Johnson,* 46 M.J. 8, 10 (1997). A military judge's decision to admit evidence will not be overturned on appeal "absent a clear abuse of discretion." *United States v. Redmond,* 21 M.J. 319, 326 (C.M.A.1986).

■ Reviewing the challenged letter, we find the first portion of the appellant's letter was directly related to the offenses. In the letter, the appellant admitted his use of LSD and his motives for doing so. It also showed how the appellant's drug abuse (coupled with alcohol abuse) directly impacted mission effectiveness, discipline and efficiency. Courts and lawmakers have long recognized that illegal drugs have an adverse impact on morale, discipline and military readiness. *See generally Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. Trottier,* 9 M.J. 337, 345–46 (C.M.A.1980). The appellant himself acknowledged the adverse impact that drugs had on his performance of his military duties. The facts contained in the letter, such as the appellant's repeated use of illegal drugs, his desire to refrain from drug abuse, and his early difficulties in doing so, also related to the appellant's rehabilitative potential. As such, the military judge was entirely correct that this statement was admissible as evidence in aggravation, and that it was relevant to the appellant's potential for rehabilitation.

More problematic is the second portion of the statement, wherein the appellant seems to challenge the propriety of the anticipated court-martial. Although trial counsel argued that this showed the appellant was not accepting responsibility for his conduct, we conclude that was not a fair or reasonable construction of the statement. Simply put, an accused's natural anxiety about facing a general court-martial does not indicate a lack of rehabilitative potential. However, as the military judge astutely noted, the appellant in his letter did not suggest he did not commit the crimes—he only questioned whether the evidence was sufficient to sustain a prosecution by general court-martial. The appellant explained to the military judge that his letter was based upon his lack of understanding of the law, and that his defense counsel subsequently explained it to his satisfaction. The military judge's inquiry into this area, and the answer received in response, indicates the military judge did not consider this portion of the letter for the improper purpose suggested by trial counsel.

■ The appellant also contends that the introduction of the appellant's letter to his

congressman violates Air Force policy and federal law, and cites 10 U.S.C. § 1034 in support. That statute provides that no person may restrict a member of the armed forces from communicating with a member of Congress, and that no person may take or threaten to take an adverse personnel action as a reprisal against a member of the armed forces for communicating with a member of Congress. The appellant also cites Air Force Instruction 90–401, *Air Force Relations with Congress,* ¶ 1.5 (1 Jul 1998), which simply mirrors the federal law. The appellant contends that introducing the letter for sentencing constituted a reprisal against the appellant.

We do not find any retaliatory action by the government in this case. The court-martial action was contemplated before the appellant ever wrote the letter. The prosecutor's motive in introducing the letter as evidence in sentencing was to punish the appellant for the crimes he committed, not to punish him for communicating with Congress. *Compare United States v. Schmidt,* 36 C.M.R. 213, 1966 WL 4447 (C.M.A.1966). As appellant concedes, neither federal law nor Air Force regulation prevents use of congressional communications in adverse actions.

■ This was a trial by military judge sitting alone. Military judges are presumed to know the law and apply it correctly. *United States v. Manns,* 54 M.J. 164, 167 (2000) ("[b]ecause this was a bench trial, the potential for unfair prejudice was substantially less than it would be in a trial with members"); *United States v. Cacy,* 43 M.J. 214, 218 (1995); *United States v. Cardenas,* 9 F.3d 1139, 1156 (5th Cir.1993) ("[t]he prejudicial impact of erroneously admitted evidence in a bench trial is presumed to be substantially less than it might have been in a jury trial"). We are convinced the military judge did not consider this evidence for any improper purpose.

### Sentence Appropriateness

The appellant maintains the sentence adjudged and approved is inappropriately severe in this case. He argues that his youth and inexperience at the time of the offenses, his admitted drug abuse problem, and his cooperation with authorities when apprehended all mitigate his offenses.

■ Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this Court to approve only that sentence, or such part or amount of the sentence, as it finds correct in law and fact and determines should be approved. The determination of sentence appropriateness "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988). In order to determine the appropriateness of the sentence, this Court must consider the particular appellant, the nature and seriousness of the offense, the appellant's record of service and all matters contained in the record of trial. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982); *United States v. Alis,* 47 M.J. 817, 828 (A.F.Ct.Crim.App.1998).

■ We do not find the appellant's sentence to be inappropriately severe under all the circumstances of this case. The appellant was convicted of wrongfully using LSD 20 times. Drug abuse is a serious threat to readiness and discipline in the military—the appellant's own case is ample proof of the sometimes subtle yet pervasive adverse impact on duty performance which can result from the use of illegal drugs. Making matters worse, the appellant often used LSD on base, in the dormitory, with other military members, thereby multiplying the negative impact of his crimes. On one occasion he even distributed LSD to two other military members.

We do not judge sentence appropriateness only by the offenses, however—we must look at the individual as well. At the time of trial this appellant had a fairly short record of service and a moderately long record of disciplinary infractions, including two punishment actions under Article 15, UCMJ, and three letters of reprimand. His duty performance reports were far from exemplary. Considering his service record, we find no basis for reducing an otherwise appropriate sentence.

### Article 58b, UCMJ and the Double Jeopardy Clause

We find no merit in the appellant's contention that the automatic forfeiture provision of Article 58b, UCMJ, 10 U.S.C. § 858b, violates the Double Jeopardy Clause of the Fifth Amendment. *United States v. Promin,* 54 M.J. 467 (2001). "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). It is clear that Congress intended the automatic forfeiture provisions of Article 58b, UCMJ, to take effect in a case such as this.

### The Promulgating Order

The appellant correctly notes that the general court-martial order promulgating the result of trial does not properly reflect the offense alleged in Specification 2 of the Charge. The promulgating order incorrectly represents the appellant was charged and convicted of distributing LSD on divers occasions. In fact, the appellant was only charged and convicted of a single distribution of LSD. Additionally, the first paragraph of the order states incorrectly the appellant's rank. We will order corrective action in our decretal paragraph.

### Post–Trial Processing Errors

Although not raised as error by the appellant, we note several errors in the post-trial processing of this case. For example, the report of result of trial attached to the staff judge advocate's recommendation incorrectly indicates that total forfeiture of all pay and allowances was part of the adjudged sentence. Nonetheless, the promulgating order got the sentence right. Similarly, the personal data sheet underreported the appellant's length of service and one award. Trial defense counsel may have chosen to overlook this since it also underreported the number of prior Article 15 punishments he received.

These documents were properly served upon the appellant and defense counsel, who raised no objection to these errors, thus waiving the right to object. Article 60(d), UCMJ, 10 U.S.C. § 860(d). Where there is no defense objection we will not reverse, absent plain error. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Considering the relatively minor nature of these errors, we find no material prejudice to the appellant's substantial rights. However, we encourage counsel to pay careful attention to these post-trial documents. Practitioners may find it helpful to use the personal data sheet from the record of trial in post-trial processing to help assure the information is current.

### Conclusion

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. The record is returned to The Judge Advocate General for administrative correction of the promulgating order. The record need not be returned to this Court following administrative correction of the order unless further appellate review is required. Accordingly, the findings and sentence are

AFFIRMED.