**UNITED STATES**

v.

**Colonel James A. SILLS, United States Air Force.**

**ACM 34323.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 10 March 2000.

Decided 18 Oct. 2001.

Appellate Counsel for Appellant: Captain Karen L. Hecker (argued), Colonel James R. Wise, Lieutenant Colonel Beverly B. Knott, and Lieutenant Colonel Timothy W. Murphy.

Appellate Counsel for the United States: Captain Suzanne Sumner (argued), Colonel Anthony P. Dattilo, Major Lance B. Sigmon, and Captain Christopher A. Santoro.

Before BURD, HEAD, and BRESLIN, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Judge:

The appellant was convicted, contrary to his pleas, of one specification of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907, one specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928, three specifications of indecent acts with a female under 16 years of age and one

specification of taking indecent liberties with a female under 16 years of age, in violation of Article 134, UCMJ, 10 U.S.C. § 934, and one specification of conduct unbecoming an officer by engaging in an unprofessional relationship with a civilian employee under his supervision, in violation of Article 133, UCMJ, 10 U.S.C. § 933. The appellant was found not guilty of one specification of sodomy, one specification of assault consummated by a battery, one specification of indecent acts with a female under 16 years of age, and one specification of communicating a threat. The court-martial sentenced the appellant to a dismissal and confinement for 8 years. The convening authority disapproved the findings of guilt of one specification of assault consummated by a battery, two specifications of indecent acts with a female under 16 years of age, and one specification of indecent liberties with a female under 16 years of age. The convening authority amended the inclusive dates for one specification of indecent acts with a female under 16 years of age, but otherwise approved the remaining findings of guilt. The convening authority reassessed the sentence, and approved only so much of the punishment as called for a dismissal and confinement for 2 years.

The appellant raises numerous allegations of error. He maintains: 1) The evidence is legally and factually insufficient to sustain the conviction for false official statement; 2) The amendment of the inclusive dates of the specification alleging indecent acts with a female under 16 years of age was improper, and the specification violated the statute of limitations; 3) Prosecuting the appellant for making a false official statement about acts not within the statute of limitations violated his due process rights; 4) The trial counsel improperly cross-examined the appellant about whether adverse witnesses were lying; 5) The military judge erred in admitting a prior consistent statement; 6) It was error for the convening authority to reassess the sentence when a rehearing on sentence was required; 7) When an adjudged sentence does not include fines or forfeitures, applying the automatic forfeiture provisions of Article 58b, UCMJ, 10 U.S.C. § 858b, violates the Double Jeopardy Clause; 8) Where the appellant was retirement-eligible, it was plain

error for the military judge not to instruct the members that adjudged forfeitures would be assessed against the appellant's retired pay; and 9) The approved sentence is inappropriately severe.

### Statute of Limitations—False Official Statement

The appellant was convicted of making a false official statement during a Sensitive Compartmented Information (SCI) nominee screening interview. The appellant was asked whether he had ever engaged in deviant sexual behavior, and he answered, "No." The theory of the prosecution was that the appellant had engaged in deviant sexual behavior by kissing, fondling, and digitally penetrating two females under 16 years of age, and that the appellant lied when he denied the behavior. The official statement in question occurred within the statute of limitations, but most, if not all, the instances of deviant sexual behavior occurred outside the five-year statute of limitations for such offenses.

The appellant now contends that prosecuting the appellant for making a false official statement about acts not within the statute of limitations violated his due process rights. We do not agree.

In *Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), the Supreme Court explained:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.

 The statute of limitations is the primary protection for an accused against pre-accusation delay. *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Reed,* 41 M.J. 449, 451 (1995); *Perez v. Sullivan,* 793 F.2d 249, 259 (10th Cir.1986). Our superior court

has ruled that, if the statute of limitations is insufficient, an accused may assert the Due Process Clause of the Fifth Amendment. *Reed,* 41 M.J. at 451; *United States v. Vogan,* 35 M.J. 32, 34 (C.M.A.1992). There may be a due process violation when delay prior to the initiation of charges is "incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." *United States v. Lovasco,* 431 U.S. 783, 796 n. 17, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Our superior court held that in order to prevail on such a due process claim, an accused has the burden to show an egregious or intentional tactical delay and actual prejudice. *Reed,* 41 M.J. at 452.

▇ The appellant has not made the required showing in this case. There is no indication that the government delayed the preferral of charges in this case to obtain an unfair tactical advantage or for some other improper purpose. Additionally, the appellant has not established specific prejudice by showing that a witness's testimony or some physical evidence was lost. "[C]onclusory allegations of prejudice, otherwise unsupported in the record, do not constitute valid grounds for dismissal." *United States v. Comosona,* 614 F.2d 695, 697 (10th Cir.1980).

The appellant relies, instead, upon the concept of fairness underlying statutes of limitations. In *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), the Supreme Court noted the basis in law for statutes of limitations.

Statutes of limitation find their justification in necessity and convenience rather than logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 88 L.Ed. 788 [(1944)]. They are by definition arbitrary, and their operation does not discriminate between the just and unjust claim, or the voidable [*sic*] and un-

avoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what is now called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitations shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

It is clear that "questions of limitations are fundamentally matters of legislative not administrative decision. . . ." *Toussie,* 397 U.S. at 121, 90 S.Ct. 858. "[T]he statute of limitations in the Uniform Code is a matter of congressional grace and discretion." *United States v. Jones,* 26 M.J. 1009, 1011 (A.C.M.R. 1988).

To be convinced of the arbitrariness of statutes of limitations, one need not look far. Before 1986, the limitations period for most offenses under the UCMJ was two or three years, depending upon the crime. After that time, the limitations period was increased to five years, with several significant exceptions, including offenses punishable by death, and periods when the accused is absent without authority. Had the appellant been subject to civilian federal jurisdiction for a sexual offense against a minor, the limitations period would not expire until the child victim reached the age of 25 years. 18 U.S.C. § 3283 (1994).

It is our task to apply the statute of limitations as it is written. Congress prescribed the scope of the statute of limitations applicable to courts-martial. For most offenses triable by courts-martial, the limitations period is five years before the receipt of sworn charges by an officer exercising summary court-martial jurisdiction over the command. Article 43, UCMJ, 10 U.S.C. § 843. The limitation period provided by Congress begins upon the date of the offense. *Pendergast v. United States,* 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1943). Congress also has the power to define crimes. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Morgan v. Devine,* 237

U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915). Through Article 107, UCMJ, Congress made it a criminal offense to make an official statement, knowing it to be false. The plain language of the statute defines the offense as occurring when the false statement is made.

The shelter of a statute of limitations is purely a matter of legislative policy—it is not a fundamental right. Therefore, this Court is powerless to extend the statute of limitations in the UCMJ beyond the scope granted by Congress. In this case, the statute of limitations did not prevent the appellant from being tried on the charge of making a false official statement about matters occurring outside the limitations period. *See generally United States v. Beacon Brass Co.*, 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952); *United States v. Roshko*, 969 F.2d 9 (2d Cir.1992); *United States v. Zander*, 46 M.J. 558 (N.M.Ct.Crim.App.1997).

### Statute of Limitations—Indecent Acts with a Child

The special court-martial convening authority received the charges in question on 21 September 1999. Under Article 43(b)(1), UCMJ, this tolled the running of the statute of limitations for all offenses occurring on or after 22 September 1994. The charges included four specifications alleging indecent acts or liberties with females under the age of 16 years, and one specification of indecent acts with another, occurring, in whole or in part, before 22 September 1994. In a preliminary session, trial defense counsel moved to dismiss these specifications for violating the statute of limitations. The military judge denied the motion. He indicated his decision was controlled by the opinion of this Court in *United States v. McElhaney*, 50 M.J. 819 (A.F.Ct.Crim.App.1999) (hereinafter *McElhaney I*), which held that 18 U.S.C. § 3283 applied to courts-martial and extended the statute of limitations in cases involving victims under age 18 until the victim reached age 25.

The court-martial found the appellant guilty of four of these five specifications. Before the post-trial processing was complete, the Court of Appeals for the Armed Forces released its opinion in *United States v. McElhaney*, 54 M.J. 120 (2000) (hereinaf-ter *McElhaney II*), reversing this Court's earlier decision and holding that 18 U.S.C. § 3283 did not apply to courts-martial. As a result of that decision, the convening authority disapproved the findings of guilt for Specifications 1, 4, and 5 of Charge IV, because they concerned indecent acts and liberties with a child occurring before 22 September 1994, the cut-off for the five-year limitations period. Specification 3 of Charge IV alleged that the appellant committed certain indecent acts with a female on divers occasions between about 31 July 1994 and 31 March 1998. The convening authority approved the findings, but changed the inception date from 31 July 1994 to 22 September 1994.

The appellant contends that Specification 3, Charge IV, alleging indecent acts with a female violated the statute of limitations. He further alleges the convening authority acted improperly by amending the inclusive dates of the specification to conform to the statute of limitations.

As noted above, Article 43, UCMJ, sets out the statute of limitations applicable to trials by courts-martial. *McElhaney II*, 54 M.J. at 125–26. For the offense in question, a person is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges by an officer exercising summary court-martial jurisdiction over the command. Article 43(b)(1), UCMJ.

Determining the standard by which we review the alleged error in this case is a thornier issue. Both parties assert that issues concerning the statute of limitations are questions of law reviewable de novo, yet argue the factual sufficiency of the evidence.

Normally the defense asserts the statute of limitations as a motion to dismiss. Rule for Courts Martial (R.C.M.) 907(b)(2)(B). The burden of persuasion for factual matters is on the defense as the moving party. R.C.M. 905(c)(2). If it appears the statute of limitations has run, the prosecution bears the burden of proving that the statute of limitations has been tolled, extended, or suspended. R.C.M. 907(b)(2)(B), Discussion; David A. Schlueter, *Military Criminal Justice: Practice and*

*Procedure* 495 (5th ed.1999). Clearly, questions about what statute establishes the statute of limitations for courts-martial is a question of law, and the military judge's ruling is subject to de novo review. *McElhaney II,* 54 M.J. at 125; 1 Steven Childress and Martha Davis, *Federal Standards of Review,* § 2.13 (3d ed.1999). However, questions about whether certain conduct occurred within the limitations period or other relevant circumstances appear to be questions of fact. These preliminary fact decisions will not be reversed unless "clearly erroneous." *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); Childress and Davis, *supra,* § 11.04, at 11–23.

We review first the military judge's ruling on the applicable statute of limitations. The appellant's pretrial motion to dismiss that portion of Specification 3, Charge IV, which alleged conduct occurring more than five years before the receipt of the sworn charges. The military judge made preliminary findings of fact regarding the age of the victims and the date of receipt of the charges, based upon stipulations of the parties. Feeling bound by this Court's decision in *McElhaney I,* the military judge denied the motion. Of course, this Court's decision in *McElhaney I* was overruled by *McElhaney II,* which held that Article 43, UCMJ, not 18 U.S.C. § 3283, was the applicable statute of limitations for courts-martial considering crimes against children under 16 years of age. The military judge's preliminary findings of fact are undoubtedly correct. However, conducting our de novo review in light of our superior court's decision in *McElhaney II,* we must find that the military judge erred as a matter of law in ruling that 18 U.S.C. § 3283 applied to Specification 3 of Charge IV. Thus, it was error to allow the specification to go to the members with allegations extending past the five-year limitations period.

 This Court has the additional obligation of reviewing the findings under Article 66(c), UCMJ, 10 U.S.C. § 866(c). We will approve only those findings of guilt we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A reasonable doubt has often been described as one "based on reason which arises from the evidence or lack of evidence." *Johnson v. Louisiana,* 406 U.S. 356, 360, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (and cases cited therein). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). *But see United States v. Washington,* 54 M.J. 936, 941 (A.F.Ct.Crim.App.2001) (suggesting that Congress intended this Court to employ a preponderance of the evidence test in determining the factual sufficiency of the evidence).

The victim testified at length. Regarding the incidents which formed the allegations of indecent acts with another in Specification 3, Charge IV, she testified about a specific incident that occurred in Rocky Bayou, off Choctawhatchee Bay, Florida, where the appellant put his hands inside her bathing suit and fondled her breasts and genital area. She also testified that the appellant touched her inappropriately on many other occasions, but that it occurred so often that she could not pinpoint specific dates or circumstances.

The victim was unable to state when the incident at Rocky Bayou occurred. She indicated she moved to the Niceville, Florida, area in July 1994, while the appellant was still stationed in Iceland. The witness recalled that the appellant moved back to Niceville, Florida, "a few months into the school year." The accused testified that he left Iceland and returned to Niceville, Florida, during "the first few days of September, 1994." During deliberations on findings, the members recalled the victim as a witness, but she was unable to associate a specific time with the incident in Rocky Bayou, except that it must have occurred during warmer weather because they were boating.

The members returned a finding of guilty to Specification 3 of Charge IV, excepting the

words, "on divers occasions." The members' findings did not modify the charged timeframe, thus the members found the appellant guilty of committing indecent acts upon the victim on one occasion between 31 July 1994 and 31 March 1998. As noted above, the convening authority approved the findings, except that he changed the inception date to 22 September 1994 to conform to the statute of limitations.

Our task is to determine whether the evidence presented at trial is legally and factually sufficient to support the approved findings. More specifically, we must determine whether there is sufficient evidence to conclude that the single instance of indecent acts found by the members occurred within the limitations period.

■■■■ The witness could not place the incident in any timeframe. This is understandable, but it results in an utter lack of evidence of a crucial fact-whether the incident occurred within the limitations period. We cannot speculate when the members believed the offense occurred. Statistically, it is far more likely that the event took place during the three and one-half years within the statute of limitations period, rather than the three weeks outside the limitations period. However, statistical likelihood is not our measure. It is well settled that the government has the burden of proving the accused committed the charged offense within the limitations period. *Grunewald v. United States,* 353 U.S. 391, 396–97, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *United States v. York,* 888 F.2d 1050 (5th Cir.1989); *Az Din v. United States,* 232 F.2d 283, 287 (9th Cir. 1956). If the government had presented some evidence tending to show the offense occurred within the limitations period, then taking the evidence in the light most favorable to the government, we could find the evidence legally sufficient. However, the witness was unable to state when the incident occurred. Thus, we find that the evidence was legally insufficient to prove the offense occurred within the requisite timeframe. When the evidence is legally insufficient to support the findings, we must dismiss the affected findings. Article 66(d),

UCMJ, 10 U.S.C. § 866(d). We will take action in our decretal paragraph.

*Legal and Factual Sufficiency—*
*False Official Statement*

■■■■ The appellant contends the evidence is legally and factually insufficient to sustain his conviction for false official statement because the evidence is legally and factually insufficient to prove the alleged underlying "deviant sexual behavior." We do not agree.

The prosecution's theory was that the appellant committed indecent acts with two females under the age of 16 years, that these acts constituted "deviant sexual behavior," and that the appellant made a false official statement when he denied committing such acts. The appellant admitted making the official statement, and even agreed that such conduct would constitute deviant sexual behavior, but denied committing the indecent acts. Thus the pivotal issue is the sufficiency of the evidence of the underlying misconduct.

The two victims testified at length about the alleged offenses. They were subjected to extensive cross-examination, focusing on their ability to recall specific facts. Additionally, the prosecution presented evidence that one victim made a pretext telephone call to the appellant and confronted him about his sexual conduct with her. The appellant denied a sexual relationship, then admitted they might have "crossed the line a couple times," and that "I'm sorry about it and you're sorry about it and that's it." The appellant testified at length and denied committing the alleged indecent acts. He explained his response during the telephone call by alleging that on two occasions the victim had made physical overtures toward him, which he rebuffed.

The appellant points to differences between KS's pretrial statements and her trial testimony, and argues that these numerous inconsistencies make the testimony unbelievable. These same arguments were presented to the court members, who saw and heard the witness' testimony, and were in the best position to judge her credibility. We recognize that these instances began when the victim was only 10 years old, and continued for about 10 years. Also, the witness was

subjected to extensive pretrial interviews by a variety of questioners, each with a different goal. Under the circumstances, we are not surprised by the witness's difficulty in recalling some specific facts, or by differences between various statements. "The rule requiring the trier of fact to be convinced beyond a reasonable doubt as to the accused's guilt does not mean that the evidence must be free of conflict." *United States v. Steward,* 18 M.J. 506, 508 (A.F.C.M.R.1984). Finally, the appellant asserts that the fact that the court members found the appellant not guilty of certain charges and specific language from the specifications means that they found the witness unbelievable. We do not agree. Instead, we conclude only that the members were not convinced beyond a reasonable doubt of the appellant's guilt of the specific alleged acts of which he was acquitted.

The other victim, JA, testified that the appellant committed indecent acts with her during a boating trip. The appellant denied the allegations. Further, the appellant contended it was "physically impossible" for the appellant to have committed the offense, because he was recuperating from the rupture of his achilles tendon on 1 April 1991, and wore a leg cast or leg brace for the period in question. However, the prosecution showed that the appellant went boating even when his leg was in a half cast, and that he only wore his leg brace when he was wearing his uniform shoe. The court members saw and heard the testimony and found JA to be credible. We are also convinced that the evidence is legally and factually sufficient to support the charged offense.

*Cross-examination on Witness Credibility*

■ The appellant testified during the findings portion of the trial, and denied, contradicted, or attempted to explain away the allegations made by prosecution witnesses. The appellant was cross-examined at length by trial counsel. Moving from point to point, trial counsel confronted the appellant about instances where his testimony conflicted with that of the prosecution witnesses, and repeatedly inquired whether specific prosecution witnesses were lying in their testimony. However, the appellant would not say the

witnesses were lying. Instead, he either suggested that the witnesses were mistaken or said he did not know why they testified as they did. Trial defense counsel did not object to this cross-examination or to the argument of trial counsel.

The appellant contends that trial counsel improperly cross-examined the appellant about whether adverse witnesses were lying, to his prejudice. The appellant's argument is based upon our superior court's holding in *United States v. Jenkins,* 54 M.J. 12 (2000), decided after the trial of this case. *Jenkins* was a case of first impression, and adopted the holding of *United States v. Richter,* 826 F.2d 206, 208 (2d Cir.1987), that "[p]rosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper."

The basis of the Court's opinion in *Jenkins* is unclear. While the Second Circuit Court of Appeals in *Richter* based its decision upon a finding of prosecutorial misconduct through improper impeachment and misleading argument, the Court in *Jenkins* seemed to base its opinion on precedent establishing that opinion evidence about the believability of other witnesses is simply unhelpful.

The scope of the decision in *Jenkins* is also unclear. The Second Circuit Court of Appeals applies the rule in *Richter* very narrowly, only when the defendant was required to state that law enforcement officers were lying even though the veracity of the officers was not the central question in the case, the prosecution thereafter called rebuttal witnesses, and the prosecutor highlighted the testimony in closing argument. *See United States v. Kiszewski,* 877 F.2d 210, 217 (2d Cir.1989) (distinguishing *Richter* where "truthfulness was the central issue"); *United States v. Scanio,* 900 F.2d 485 (2d Cir.1990) (distinguishing *Richter* where prosecutor did not highlight the questioning during argument); *United States v. Weiss,* 930 F.2d 185 (2d Cir.1991) (distinguishing *Richter* where the witnesses were not law enforcement officers and no rebuttal witnesses were called); *United States v. Gaind,* 31 F.3d 73 (2d Cir. 1994) (distinguishing *Richter* based upon significant difference between asking if the witnesses were lying or simply mistaken, and

because the witnesses were not law enforcement agents); *United States v. Shareef*, 190 F.3d 71, 79 (2d Cir.1999) (it is not ordinarily improper for the prosecution to make temperate use of forms of the word "lie" to highlight evidence directly conflicting with the defense's testimony, or "to characterize disputed testimony" where credibility was clearly an issue). Simply put, even the Second Circuit has not granted relief unless the defendant can show the same "starkly offensive prosecutorial delinquencies" found in *Richter. Gaind*, 31 F.3d at 77; *see also United States v. Williamson*, 53 F.3d 1500 (10th Cir.1995) (Court not particularly persuaded by the reasoning in *Richter*).

The general rule is that failure to object forfeits any claim of error. Mil. R. Evid. 103(a). However, a court may take notice of plain errors that materially prejudice substantial rights, even though they were not brought to the attention of the military judge. Mil. R. Evid. 103(d). The appellant must show that there was error, the error was "plain" (i.e. clear or obvious), and that it materially affected the appellant's substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Powell*, 49 M.J. 460, 463–64 (1998).

Based upon the ruling of our superior court in *Jenkins*, we must find that the questions were improper. Considering the split of authority on this issue (*see generally State v. Hart*, 303 Mont. 71, 15 P.3d 917 (2000) (and cases cited therein)), it is not immediately apparent that the error was "clear" or "obvious." In any event, we find no plain error, because we find no material prejudice to the appellant's substantial rights. Although asked repeatedly, the appellant did not "take the bait" and call any witness a liar, thus his answers were harmless. *Jenkins*, 54 M.J. at 17–18. Moreover, the witnesses in question were not law enforcement officers, and the prosecution did not call rebuttal witnesses to contest the appellant's characterizations. Finally, the truthfulness of the various witnesses was clearly a central issue in this case, rather than a collateral matter as in *Richter*. The error was harmless.

### Admission of Hearsay Statement

One of the alleged victims testified about a series of incidents that formed the bases of most of the charges of indecent acts with a child under 16 years of age. Trial counsel attempted to elicit whether the victim ever discussed these acts with her boyfriend and what she told him. Trial defense counsel objected, claiming the question called for hearsay and there had been no suggestion of recent fabrication to bring the evidence within the exception in Mil. R. Evid. 801(d)(1)(B). The military judge sustained the objection.

Trial defense counsel cross-examined the victim at length, and brought out several apparent inconsistencies between her testimony and some prior statements. Thereafter, trial counsel again attempted to question the witness about what she told her boyfriend about these instances. The military judge ruled that the cross-examination on inconsistent statements did not raise the issue of recent fabrication and refused to allow the questions.

After the parties completed their questioning, the court members raised numerous questions, focusing mainly on whether the victim had ever reported these incidents to others, and when that may have occurred. Trial defense counsel continued to object that the testimony called for hearsay. Trial counsel then proposed amending the questions to focus on the fact of the report, but to avoid any discussion of the substance of the report in order to avoid eliciting hearsay. Trial defense counsel continued to object on the grounds that the testimony constituted an implied assertion and was therefore impermissible hearsay, and also that its prejudicial effect outweighed its probative value under Mil. R. Evid. 403. After performing the proper balancing test in Mil. R. Evid. 403, the military judge overruled the objection. The military judge allowed trial counsel to ask the victim whether, before speaking with law enforcement authorities, she ever had conversations with anyone about these alleged incidents, whom she conversed with, and when was the first conversation.

The victim's boyfriend testified later in the hearing. Over defense objection, he was permitted to testify that he had a conversation

with the victim about the allegations, when that conversation occurred, and the victim's demeanor during the conversation. He did not testify about the substance of the conversation.

The appellant maintains the military judge abused his discretion in allowing this testimony because it was inadmissible hearsay. We find no abuse of discretion.

■ As a general rule, hearsay is not admissible in evidence. Mil. R. Evid. 802. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Mil. R. Evid. 801(c). A military judge's decision to admit evidence will not be overturned on appeal absent a clear abuse of discretion. *United States v. Kelley*, 45 M.J. 275, 279 (1996).

■ In this case, the military judge allowed the questions on the theory that the testimony at issue did not concern an out-of-court statement. In fact, the victim never informed the members what she related to her boyfriend. Instead, she testified only that she had a conversation about the incidents at issue, who she talked with, and when it occurred.

The appellant cites *Park v. Huff*, 493 F.2d 923 (5th Cir.1974), and argues that the testimony at issue constituted an "implied assertion" and was therefore a statement which qualified as hearsay. Even if her testimony could be considered as a statement, it is not hearsay unless it was offered for the truth of the matter asserted. *United States v. Rynning*, 47 M.J. 420, 423 (1998). *See also* 2 John W. Strong et al., *McCormick on Evidence* §§ 249–50 (5th ed.1999). A statement may be admitted if the mere fact that it was made is relevant to some issue in the case. *United States v. Harwood*, 998 F.2d 91, 97 (2d Cir.1993); *United States v. Cardascia*, 951 F.2d 474, 486–87 (2d Cir.1991). In this case, the victim's testimony that she reported the incidents to her boyfriend were not offered to prove that the alleged incidents actually occurred, but rather to show when she made a report.

*Article 58b, UCMJ & Double Jeopardy*

The appellant's adjudged sentence included a dismissal and confinement, but did not include forfeiture of pay. The appellant maintains that when an adjudged sentence does not include fines or forfeitures, the application of the automatic forfeiture provisions of Article 58b, UCMJ, violates the Double Jeopardy Clause of the Constitution. This issue has already been resolved adversely to the appellant. *United States v. Promin*, 54 M.J. 467 (2001); *United States v. Gogas*, 55 M.J. 521, 525 (A.F.Ct.Crim.App. 2001).

*Sentencing Instructions Re: Forfeitures*

The appellant had over 26 years of active-duty service at the time of sentencing, and thus was eligible to apply for retirement. The military judge instructed the members about the authorized punishments in accordance with R.C.M. 1005(e). The military judge specifically instructed the members that, "This court may sentence the accused to forfeit all pay and allowances. A forfeiture is a financial penalty which deprives an accused of military pay as it accrues." The trial defense team indicated they had no objection to this instruction.

Now, the appellant argues that, where the appellant was retirement eligible, it was plain error for the military judge not to instruct the members that adjudged forfeitures would be assessed against the appellant's retired pay. The appellant maintains that instructing the members that forfeitures are applied against the appellant's "military pay as it accrues" did not properly inform the members that forfeitures would have been assessed against the appellant's retired pay. We do not agree.

R.C.M. 1005(a) requires the military judge to give the members "appropriate instructions" on sentencing. Failure to object to the instructions before the members close to deliberate constitutes waiver of the objection in the absence of plain error. R.C.M. 1005(e).

■ In order to find "plain error" this Court must find (1) that there was an error; (2) that the error was "plain," that is, "clear" or "obvious"; and (3) that the plain error

affects substantial rights. *Powell,* 49 M.J. at 463. The error must not only have "seriously affected 'substantial rights,' " it must also have "had an unfair prejudicial impact on the jury's deliberations." *United States v. Cousins,* 35 M.J. 70, 75 (C.M.A.1992) (quoting *United States v. Young,* 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). The plain error exception should "be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Appellate courts have been reluctant to find plain error in sentencing instructions except in the most egregious cases. In *United States v. Kirkpatrick,* 33 M.J. 132 (C.M.A. 1991), the Court held that it was plain error to instruct the members to consider in sentencing the Army policy against drugs. *See also United States v. Kropf,* 39 M.J. 107 (C.M.A.1994) (not plain error to allow argument regarding command policy on illegal drugs). *Contra United States v. Grady,* 15 M.J. 275 (C.M.A.1983). Even if a court finds error, it seldom rises to the level of "plain error." *See United States v. Boyd,* 55 M.J. 217 (2001) (not plain error not to instruct on the effect of a dismissal on temporary disability retirement, where there was no evidence presented to the members on the appellant's eligibility for it); *United States v. Schnitzer,* 44 M.J. 380 (1996) (not plain error not to instruct the members about command's agreement on a co-actor's sentence limitation in a pretrial agreement); *United States v. Prevatte,* 40 M.J. 396 (C.M.A.1994) (not plain error to allow two expert witnesses to testify about reasons supporting a decision to incarcerate the appellant); *United States v. Greene,* 41 M.J. 57 (C.M.A.1994) (not plain error for military judge to fail to instruct the members to vote by secret, written ballot); *United States v. McElroy,* 40 M.J. 368 (C.M.A.1994) (not plain error to instruct that benefits accruing from prior periods of honorable service were "vested").

 We find no plain error in this case, for several reasons. We are not convinced that the proposed instruction is entirely correct. Appellant bases this assignment of er-

ror on the proposition that forfeitures of pay adjudged against an active duty member would be taken from that member's retirement pay if he is later advanced to the retired rolls. The appellant cites only R.C.M. 1103(b)(2) in support, which provides in pertinent part that the "maximum authorized amount of a partial forfeiture shall be determined by using the basic pay, retired pay, or retainer pay, as applicable. . . ." If the appellant were receiving retired pay at the time of the sentence, no doubt the forfeiture would come from retired pay. *United States v. Hooper,* 26 C.M.R. 417, 1958 WL 3394 (1958); Department of Defense Directive (DoDD) 7000.14 R, *DoD Financial Management Regulation,* Vol 7B, Chapter 28, § 281401. However, it is not clear that would be the case if the appellant was sentenced while on active duty, and thereafter the Secretary approved his retirement. *See* 10 U.S.C. § 1401a(f) (retired member's pay may not be less than the grade in which the member is retired); 66 Comp. Gen. 425 (1987) (a retired member is entitled to pay not less than the monthly retired pay of the highest grade held after being eligible for retirement, even if the member is later reduced in grade by disciplinary action); 41 Comp. Gen. 399 (1961) (where member was sentenced to a dishonorable discharge, total forfeitures and three years' confinement, but the discharge was later disapproved and the member was allowed to retire, the sentence to total forfeitures operated only during the period of confinement and the member was entitled to full retired pay).

At the same time, we are not persuaded the instruction given was wrong. The military judge's instruction was that forfeitures would come from the appellant's "military pay," which would seem to include active duty pay or, perhaps, retired pay if appropriate. In any event, we are convinced the military judge's instruction did not clearly or substantially mislead the members in determining an appropriate sentence.

*Reassessment of Sentence/Sentence Appropriateness*

The appellant argues it was error for the convening authority to reassess the sentence when a rehearing on sentence was required,

and that the approved sentence is inappropriately severe. However, in light of our decision setting aside the remaining specification alleging sexual abuse of a female under 16 years of age, it is unnecessary to review the actions of the convening authority. We must now determine what sentence is appropriate for the offenses of which the appellant stands convicted. This responsibility leads us to the question of whether this Court may reassess the sentence, or whether it must order a rehearing on the sentence. A sharp conflict exists between the law enacted by Congress, as applied by the Supreme Court, and the construction of the law imposed by our superior court.

Article 66(c), UCMJ, 10 U.S.C. § 866(c), establishes this Court's authority and responsibility for reviewing the findings and sentences of courts-martial. "It may affirm only such findings of guilty and the sentence or such part of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

The legislative history of this provision makes it abundantly clear that Congress intended the service courts (then named the boards of review) to have broad powers to determine the appropriateness of courts-martial sentences. Professor Edmund M. Morgan, Jr., the chairman of the subcommittee, testified that under the proposed legislation, the boards of review would have very extensive powers. "It may review law, facts, and practically, sentences; because the provisions stipulate that the board of review shall affirm only so much of the sentence as it finds to be justified by the whole record." *Hearings before a Subcommittee of the Senate Committee on Armed Services on S. 857 and H.R. 4080*, 81st Cong., 1st Sess. 42 (1949) (Statement of E.M. Morgan, Jr., Professor of Law, Harvard University). Representatives from the military services specifically opposed granting such broad power to the boards of review. Major General Thomas Green, The Judge Advocate General of the Army, opined that allowing the boards of review to decide what sentence should be approved would invade command prerogative. *Id.* at 258, 262. Rear Admiral George L. Russell, The Judge Advocate General of

the Navy, advised the subcommittee that granting broad authority to the boards of review to make a final determination on the appropriateness of the sentence should be vested in higher authority, such as the Office of The Judge Advocate General. *Id.* at 285. In spite of this opposition, the Subcommittee recommended that the boards of review have this power over sentences. *Id.* at 311. The report of the subcommittee specifically recommended, "The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces." S.Rep. No. 81–486 at 28.

Another provision of the new UCMJ also reflected the drafter's intent that the boards of review have broad authority to reassess the sentence. Article 63, UCMJ, 10 U.S.C. § 863, provided procedural guidance for rehearings. The article, by its terms, limited rehearings to cases where the fact finders had to determine both the findings and the sentence. There was no provision for rehearings on the sentence alone.

Finally, the drafters also intended that the power of our superior court be very limited with regard to sentencing. Discussing the authority of the (then) Court of Military Appeals, the drafters noted, "The only action which the court may take with respect to the sentence is to determine whether or not it is within legal limits." H.R. Rep. 81–491 at 32; S.Rep. No. 81–486 at 29.

Following the enactment of the Uniform Code of Military Justice, jurists and legal scholars acknowledged that the boards of review had sweeping authority over sentences. Major Robert M. Currier and Captain Irvin M. Kent, *The Boards of Review of the Armed Services*, 6 Vand. L.Rev. 241 (1953). In *United States v. Keith*, 4 C.M.R. 34, 43, 1952 WL 2681 (C.M.A.1952), the (then) Court of Military Appeals recognized the impracticality of any rehearing on sentence, and the authority of boards of review to reassess sentences even after disapproving certain findings of guilt. Subsequent opinions reinforced this basic tenet of military law. *United States v. Bigger*, 8 C.M.R. 97,

1953 WL 1635 (C.M.A.1953); *United States v. Field*, 18 C.M.R. 3, 7–8, 1955 WL 3275 (C.M.A.1955). *See Wilkinson v. Fowler*, 234 F.2d 615 (5th Cir.1956); *Jackson v. Taylor*, 234 F.2d 611, 614 n. 3 (3d Cir.1956) (and cases cited therein).

In *Jackson v. Taylor*, 353 U.S. 569, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957), the Supreme Court of the United States interpreted the language of Article 66(c), UCMJ, and defined the scope of the authority of the boards of review to determine sentence appropriateness after modifying the approved findings. The petitioner was one of three soldiers convicted by general court-martial of premeditated murder and attempted rape of a Korean woman. During the sentencing proceeding, the members were advised that the conviction for premeditated murder carried the minimum punishment of life imprisonment, and the maximum punishment of death. The courts-martial sentenced each soldier to life imprisonment, and the convening authority approved the sentences. The Army Board of Review found the evidence insufficient to support the convictions for murder and set them aside, affirming only the convictions for attempted rape. The Army Board of Review modified the sentences, approving 20 years' confinement, the maximum punishment for attempted rape. Subsequent petitions for grant of review by the Court of Military Appeals did not raise any issue concerning the authority of the board of review to reassess the sentences, and were summarily denied. Each of the three soldiers filed a writ of habeas corpus in the district in which he was imprisoned, and each challenged the authority of the Board of Review to impose the sentence. The petitioners argued that a rehearing was required, because they were never sentenced for the offense for which they were properly convicted. Two federal circuits denied the petitions; one circuit granted relief. The Supreme Court granted certiorari to resolve the conflict between the circuits, and to settle an important question in the administration of the UCMJ.

The Supreme Court squarely addressed the question of whether the language of Article 66(c), UCMJ, gave the board of review the authority to modify the life sentence to 20 years' confinement after the murder conviction was set aside. *Jackson v. Taylor*, 353 U.S. at 574, 77 S.Ct. 1027. After reviewing the plain language of the statute and its legislative history, the Supreme Court ruled, "It is manifest then that it was the intent of Congress that a board of review should exercise just such authority as was exercised here." *Id.* at 577, 77 S.Ct. 1027. The petitioner argued that he was never sentenced by the court-martial for the offense for which findings of guilt were ultimately approved. The Court dismissed the argument, noting that the single sentence originally imposed covered both the convictions. *Id.* at 574, 77 S.Ct. 1027. The Supreme Court specifically rejected the argument that a rehearing on sentence was required, finding "no authority in the Uniform Code for such a procedure." *Id.* at 579, 77 S.Ct. 1027. The Court noted that it would be "impractical and unfeasible to remand for the purpose of sentencing alone," because courts-martial have no continuity or situs, and the previously—detailed members may be scattered throughout the world. For this reason, Congress decided that the board of review should exercise this power. The Supreme Court also rejected the argument that a rehearing on sentence should be held before a new court-martial.

> Such a procedure would merely substitute one group of nonparticipants in the original trial for another. Congress thought the board of review could modify sentences when appropriate more expeditiously, more intelligently, and more fairly. Acting on a national basis the board of review can correct disparities in sentences and through its legally-trained personnel determine more appropriately the proper disposition to be made of the cases. Congress must have known of the problems inherent in rehearing and review proceedings for the procedures were adopted largely from prior law. It is not for us to question the judgment of the Congress in selecting the process it chose.

*Id.* at 580, 77 S.Ct. 1027. *See also Fowler v. Wilkinson*, 353 U.S. 583, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957).

The opinions of the Court of Military Appeals have been widely divergent in the manner in which they handled the issues of sentence appropriateness. At times, the Court held that decisions regarding sentence appropriateness were the sole province of the boards of review, and were not subject to review by the Court of Military Appeals. *United States v. Russo*, 29 C.M.R. 168, 174, 1960 WL 4477 (C.M.A.1960); *United States v. Atkins*, 23 C.M.R. 301, 1957 WL 4484 (C.M.A.1957); *United States v. Stene*, 22 C.M.R. 67, 1956 WL 4737 (C.M.A.1956).

At other times, the decisions of the Court of Military Appeals diminished the authority of the boards of review to determine sentence appropriateness, and created a power of review in the Court of Military Appeals. In *United States v. Voorhees*, 16 C.M.R. 83, 105, 1954 WL 2431 (1954), the Court of Military Appeals set aside the sentence as reassessed by the Army Board of Review because it was "exceedingly severe," and ordered a rehearing on sentence "in the interests of justice." In *United States v. Dukes*, 5 M.J. 71 (C.M.A.1978), the Court indicated that, while it would not review sentence appropriateness determinations, it could review findings of law regarding a lack of prejudice resulting from errors. The Court ruled that the Army Court of Military Review abused its discretion when it found no prejudicial error, and therefore ordered a rehearing on sentence before a court-martial. In *United States v. Gibson*, 11 M.J. 435, 437 (C.M.A.1981), the Court set aside a multiplicious charge and ordered a rehearing on sentence on the grounds that it was "not convinced by our review of the record that the military judge would have adjudged the same sentence even if one of the two charges had been dismissed."

In *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A.1985), the Court created a distinction between the service court's review of sentence appropriateness during the "ordinary review of a case," and cases in which it finds prejudicial error. The Court articulated a new test: "[W]hen prejudicial error has occurred in a trial, not only must the Court of Military Review assure that the sentence is appropriate in relation to the affirmed findings of guilty, but it must also assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." The ratio decidendi of the opinion was that a rehearing on sentencing was required to assure that the sentence was rendered by the court-martial under Articles 51 and 52, UCMJ, 10 U.S.C. §§ 851 and 852. The opinion was authored by (then) Chief Judge Everett; Judge Cox (newly-appointed) deferred to the Chief Judge's view and concurred; Judge Fletcher did not participate. The opinion made no mention of the Supreme Court's decision in *Jackson v. Taylor*, and made no attempt to explain why the *Suzuki* Court relied on rationale rejected by the Supreme Court.

Later, in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the Court addressed the issue of whether sentence reassessment by the court of military review deprived the appellant of his statutory right to have the sentence adjudged by court members. Chief Judge Everett, writing for the Court, incorporated the rationale of *Suzuki* that an appellant did have such a right. The Court held that the courts of military review could only reassess after a finding of prejudicial error if the court was convinced that the sentence, as reassessed, is no greater than the sentence that the original court-martial would have imposed. *Id.* at 308. Our superior court has continued to apply the restrictive requirements of *Sales* in all later cases concerning sentence reassessment after a finding of prejudicial error. *United States v. Eversole*, 53 M.J. 132 (2000); *United States v. Taylor*, 47 M.J. 322, 325 (1997); *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990).

Thus there are two contrasting views of the scope of this Court's authority under Article 66(c), UCMJ, to reassess a sentence after a finding of prejudicial error. On one hand, the plain language of the statute and the crystal-clear opinion of the Supreme Court in *Jackson v. Taylor* give this Court the responsibility and unfettered authority to reassess a sentence, even after modifying the approved findings, and provides no authority requiring a rehearing before a court-martial. On the other hand, a long line of cases from

our superior court denies this Court the authority to reassess this sentence unless we *know* what magnitude of sentence the trial court would have imposed. Our superior court also reserves to itself the power to substitute its judgment for ours as to whether we have successfully accomplished this feat. *Eversole,* 53 M.J. at 134; *United States v. Harris,* 53 M.J. 86, 88 (2000); *United States v. Jones,* 39 M.J. 315 (C.M.A.1994). Clearly, such power over sentences is far beyond anything envisioned by the drafters of the UCMJ. *See* H.R.Rep. No. 81–491 at 32; S.Rep. No. 81–486 at 29.

This conflict is irreconcilable. Undoubtedly, if the Court of Appeals for the Armed Forces applied the *Sales* criteria to the facts in *Jackson v. Taylor,* the result would be diametrically different than that reached by the Supreme Court.

■ We conclude that the will of Congress, as expressed in the plain language of the statute and applied by the Supreme Court in *Jackson v. Taylor,* is that this Court has the responsibility and authority to reassess this sentence, regardless of whether we can determine what the original trial court would have done. Furthermore, there is no statutory or regulatory requirement that we return this case or any case for a rehearing on sentencing alone.

We do not arrive at this decision lightly. We are aware of the requirement that we follow the precedent of our superior court. *United States v. Allbery,* 44 M.J. 226, 228 (1996). However, we cannot follow that precedent on this issue, for many reasons. There is a hierarchy of authority that controls this Court. A precedent of the Supreme Court "must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). We note that there has been no intervening decision by the Supreme Court since the opinion in *Jackson v. Taylor.* Significantly, the rationale underlying the decisions in *Sales* and its progeny—

that reassessment by this Court denies the appellant his right to be sentenced by a court-martial—was rejected by the Supreme Court in *Jackson v. Taylor.* As our superior court noted, "the operative language of Article 66(c) ... has not changed a bit since *Jackson v. Taylor,* or indeed since the inception of the Uniform Code." *Eversole,* 53 M.J. at 133.* It is true that the President, acting under the power delegated by Article 36, UCMJ, 10 U.S.C. § 836, implemented R.C.M. 810(a)(2) and 1203(c)(2) concerning rehearings on sentence only; however, these provisions are not mandatory by their terms. Finally, as judge advocates with extensive experience with courts-martial, including rehearings on sentencing, we agree with our highest court that it would be unworkable to have a new court-martial try to decide a sentence in this case based largely upon their review of about 3,000 pages of record and exhibits. The judges of this Court can reassess sentences more expeditiously, more intelligently, and more fairly than a new group of non-participants. *Jackson v. Taylor,* 353 U.S. at 580, 77 S.Ct. 1027.

■ We now reassess the sentence. The maximum punishment for the offenses before the court members was a dismissal, confinement for 32 years, a fine, and forfeiture of all pay and allowances. The action of the convening authority and the findings of this Court set aside several specifications and charges, reducing the maximum authorized period of confinement to seven years. The appellant is a highly decorated officer, with a distinguished flying record. At the same time, the offenses for which he stands convicted are especially serious, including abusing his position as an officer and a commander to satisfy his personal desires and making a false official statement about deviant sexual conduct involving two minor females. Exercising the authority of this Court under Article 66(c), UCMJ, we find that the appropriate punishment in this case is a dismissal and confinement for two years.

---

* Congress amended the second sentence of Article 66(c), UCMJ, by changing the words "shall affirm only" to "may affirm only." Aug. 10, 1956, c. 1041, 70A Stat. 59. In *Jackson v. Taylor,* 353

U.S. at 573 n. 3,, 77 S.Ct. 1027 the Supreme Court determined that the changes were not pertinent to that case.

## Conclusion

The findings of guilt to Specification 3, Charge IV, and Charge IV, are set aside. The findings of guilt for Charge I and its Specification, Charge V and its Specification, and the sentence, as reassessed, are

AFFIRMED.