# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 38959

————————————

## UNITED STATES
*Appellee*

**v.**

## Mark A. ANDERSON
Lieutenant Colonel (O-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 20 April 2017

————————————

*Military Judge:* Gregory O. Friedland (arraignment) and Charles E. Wiedie (trial).

*Approved sentence:* Dismissal and a reprimand. Sentence adjudged 7 August 2015 by GCM convened at Kadena Air Base, Okinawa, Japan.

*For Appellant:* Major Jarett Merk, USAF; Frank J. Spinner, Esquire.

*For Appellee:* Major G. Matt Osborn, USAF; Gerald R. Bruce, Esquire.

Before J. BROWN, SANTORO, and MINK, *Appellate Military Judges.*[1]

Judge SANTORO delivered the opinion of the court, in which Senior Judge J. BROWN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

---

[1] Even though Chief Judge Drew was listed on the original Special Panel order, as the former Staff Judge Advocate for Air Force Special Operations Command with prior knowledge of the case, he did not participate in this decision.

SANTORO, Judge:

At a general court-martial, Appellant pleaded guilty to disobeying an order and adultery in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934. Officer members sentenced him to a dismissal and a reprimand. The convening authority approved the sentence as adjudged.

Appellant raises four assignments of error: (1) the military judge abused his discretion by accepting the guilty plea to adultery, (2) the military judge abused his discretion by admitting testimony during the pre-sentencing proceedings, (3) Appellant's sentence is inappropriately severe, and (4) the staff judge advocate (SJA) erred by advising the convening authority to consider changes to Article 60, UCMJ, 10 U.S.C. § 860, which did not apply to Appellant's case, when deciding whether to approve the findings and sentence. We affirm.

## I. BACKGROUND

Appellant, a married man, was on a temporary duty (TDY) assignment to Thailand as part of Air Force joint combined exchange training exercise. While on that deployment, Appellant allowed SN, a civilian Thai national, into his quarters in violation of the mission commander's order prohibiting unauthorized guests in government-procured lodging. Appellant also engaged in sexual intercourse with SN on multiple occasions.

## II. DISCUSSION

### A. Acceptance of Guilty Plea

Appellant argues that his plea to adultery was improvident because the military judge erroneously described the elements of the offense and failed to develop fully the factual basis to support the guilty plea. We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015). "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014); *see Inabinette*, 66 M.J. at 322. "Appellant has the burden to demonstrate a substantial basis in law and fact for questioning the plea." *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004)).

The military judge conducted the inquiry required by *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969), and correctly advised Appellant that the elements of the offense of adultery were: (1) at the times and places alleged, he wrongfully had sexual intercourse with SN, (2) at the time Appellant was married to another, and (3) under the circumstances the conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces. Appellant acknowledged understanding of those elements and admitted facts that both he and his trial defense counsel (the same counsel who represents him in this appeal) acknowledged were sufficient to establish the factual basis of the plea.

Now, however, Appellant challenges the sufficiency of the *Care* inquiry on two bases, the first of which relates to words used by the military judge when he offered definitions related to the elements. We compare the words the military judge used with those Appellant believes he should have used:[2]

> Transcript: "'Service discrediting conduct' is conduct which tends to harm the reputation of the service or lower it in public esteem."
>
> Asserted as correct: "Service discrediting conduct" is conduct which tends *directly* to harm the reputation of the service or lower it in public esteem.
>
> Transcript: "'Conduct prejudicial to good order and discipline' includes adultery that has an obvious and measurably diverse effect on the discipline, morale, or cohesion of a military unit or organization . . . ."
>
> Asserted as correct: "Conduct prejudicial to good order and discipline" includes adultery that has an obvious and measurably *divisive* effect on the discipline, morale, or cohesion of a military unit or organization . . . .

Appellant does not claim that he was confused by the military judge's instructions or that had he received the "asserted as correct" definitions above, he would not have pleaded guilty. Rather, his only argument is that the military judge's use of definitions that were not taken verbatim from either the *Military Judges' Benchbook*, Department of the Army Pamphlet 27-9, or the *Manual for Courts-Martial* "undermines confidence in the conclusion" that he understood the offenses to which he pleaded guilty.

We have reviewed the entirety of the *Care* inquiry and see nothing that causes us to believe Appellant was in any way misled or confused about the elements of the offense to which he pled guilty. Moreover, Appellant admitted

---

[2] While these may be transcription errors that were not identified during the parties' review of the record, we will assume that the military judge's words are accurately reflected above.

under oath that his conduct was *both* prejudicial to good order and discipline and service discrediting, and he explained in detail to the military judge why that was so.

Appellant's admissions also undermine his second attack on the sufficiency of his plea: that the military judge failed to elicit facts to support a finding that his actions were prejudicial to good order and discipline or service discrediting. As Appellant told the military judge:

> [The adulterous] conduct was prejudicial to good order and discipline and of a nature to bring discredit to the armed forces for the following reasons:
>
> I used a government procured room for the sexual encounter during a period in which I was TDY to Thailand. By bringing her to my room, I violated an order to not have unauthorized guests in my room. Additionally, I shared information about [SN] with Major [M], a subordinate in my unit, implying that I had a sexual relationship with her and suggesting that he could too. Finally, my involvement with [SN] became known to other members of my unit and to personnel in the U.S. Embassy in Thailand. I could have refrained from engaging in sex with [SN], and have no legal justification or excuse for my behavior.

When the military judge asked for additional detail about why Appellant believed his conduct was prejudicial or service discrediting, he admitted that he was a lieutenant colonel on a military deployment, his subordinates learned about the relationship, and he facilitated his adultery by violating his commander's order not to have guests in his billeting room. Finally, Appellant admitted that had his conduct with SN, a Thai national, become known to the local population, it would have undermined the deployment.

There is no substantial basis in law or fact to question Appellant's plea. The military judge did not abuse his discretion in accepting it.

**B. Sentencing Testimony**

There was no stipulation of fact to accompany Appellant's plea. SN testified through an interpreter about the facts and circumstances of Appellant's offenses, including the following exchange:

> Q. Okay. And did you go back to Mark's house—or to Mark's—the hotel that night?
>
> A. Yes.
>
> Q. What did you do when you got to his hotel?
>
> A. I lay down.

4

Q. Okay. Did you go to sleep?

A. Yes.

Q. Okay. Later that night did you have sex with Mark?

A. Yes.

Q. Did you have sex on his bed?

A. Yes.

Q. Was he on top of you?

A. Yes.

Q. Did you have sex on the coffee table?

A. Yes.

Q. Did you have sex in the bathroom?

A. Yes.

Q. Why were you in the bathroom?

A. Vomit.

Q. Okay. Did he have sex with you while you were vomiting?

A. Yes.

Trial defense counsel objected to the final two questions based on Rule for Court-Martial (R.C.M.) 1001(b)(4) and Mil. R. Evid. 403, arguing that the challenged testimony (1) related to an event not admitted by Appellant during the *Care* inquiry, (2) was not proper victim-impact evidence, and (3) was "just too close to the line of suggesting that this was a nonconsensual event."[3] The military judge overruled the objection, finding that the testimony was "describing the actual adultery . . . it is directly related to the offense of adultery, involves the facts and circumstances of the adultery. It gives the charge context, and so I believe it is a proper matter for consideration by the members under R.C.M. 1001."

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). Such a review implicitly acknowledges a military judge has a range of choices and we will not overturn an action taken within that range. *United States v.*

---

[3] Appellant had initially been charged with sexually assaulting SN. That charge was withdrawn and dismissed after arraignment but before entry of pleas. The members were unaware of that allegation.

*Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013). Rule for Courts-Martial 1001 author-izes admission of evidence in aggravation, which includes the facts and circum-stances of the underlying offense. R.C.M. 1001(b)(4).

Appellant's first challenge to the testimony, that it described an incident not admitted by Appellant during the *Care* inquiry, provides him no relief for two reasons. First, because his objection at trial was not to testimony about the incident itself but rather to SN's statement she was vomiting, he has failed to preserve that objection for appellate review. Second, even had the objection been preserved, he would still be entitled to no relief because the Government may introduce evidence about the facts and circumstances surrounding Appel-lant's offenses. *United States v. Gogas*, 55 M.J. 521, 523 (A.F. Ct. Crim. App. 2001), *aff'd*, 58 M.J. 96 (C.A.A.F. 2003).

His second challenge, that the testimony was not proper victim-impact ev-idence, also fails. The testimony was admitted to demonstrate the facts and circumstances of the offense itself, not its impact upon the victim or anyone else.

The military judge also addressed Appellant's third challenge, that the tes-timony suggested that the event was non-consensual, as part of his Mil. R. Evid. 403 analysis:

> Now, the fact that the witness felt that she was going to be sick or that she actually was sick before, that alone this court does not find to be unfairly prejudicial, and it's certainly not that the probative [sic] of the evidence is substantially outweighed by the danger of unfair prejudice. There are numerous reasons why an individual might have gotten sick. It could have been bad food; it could have been a stomach bug. As long as—and again, this is based on the proffer that's been made, there's not going to be talk of alcohol so it raises an issue of whether it was incapacita-tion or not, as long as that's not done, as long as it's not being raised about it being nonconsensual, just simply the fact that she got sick is not unfairly prejudicial in this court's opinion.

The military judge did not abuse his discretion by admitting the challenged testimony.

## C. Sentence Severity

Appellant contends that a dismissal is inappropriately severe for his of-fenses. This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). In determining whether a sentence should be approved, our authority is "not legality alone, but legality limited by appropriateness." *United States v. Nerad*,

69 M.J. 138, 141 (C.A.A.F. 2010) (quoting *United States v. Atkins*, 23 C.M.R. 301, 303 (C.M.A. 1957)). This authority is "a sweeping congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (quoting *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001)). This task requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). In conducting this review, we must also be sensitive to considerations of uniformity and evenhandedness. *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citing *United States v. Lacy*, 50 M.J. 286, 287–88 (C.A.A.F. 1999)). However, while we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Lacy*, 50 M.J. at 288; *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

Appellant had 16 years of service: 11 as a commissioned officer in the Air Force and 5 as an enlisted member of the Army. He provided significant evidence of his career accomplishments and several senior officers offered evidence on his behalf.

Conversely, Appellant was the flight commander on a foreign-exchange deployment. He knowingly violated his mission commander's order not to bring guests into the hotel in which his subordinates were also staying. Appellant had also received a letter of reprimand and had an unfavorable information file established against him for creating or contributing to a hostile work environment by (a) being absent during the duty day without taking leave, (b) intentionally scheduling himself and selected non-commissioned officers for desirable temporary duty assignments, and (c) failing to fulfill his obligations relating to the medical provider credentialing process.

The maximum sentence for the offenses to which Appellant pled guilty was a dismissal and confinement for 18 months. The sentence was well within the authority of the convening authority to approve. In arguing that a dismissal is inappropriately severe, Appellant renews an argument he made at trial: that his adultery does not warrant the punishment imposed. This argument misses the critical point that Appellant, a senior officer and flight commander, knowingly violated an order while on a deployment in a foreign country, his disobedience was solely to satisfy his personal desires, his disobedience became known to his subordinates, and jeopardized the interests of the United States the deployment was intended to serve. While the dismissal is certainly a severe punishment, we cannot say that it is *inappropriately* severe, and any action we took to mitigate the dismissal would be more akin to an act of clemency. Clem-

ency is solely within the purview of the convening authority and, as noted below, it is evident from the record that the convening authority took his responsibility seriously and engaged in considerable deliberation before deciding clemency was not appropriate.

## D. Staff Judge Advocate's Recommendation

Finally, Appellant contends that the SJA provided erroneous advice to the convening authority about the factors he should consider when deciding whether to approve the findings and sentence. Proper completion of post-trial processing is a question of law which we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). An error in the SJA's recommendation (SJAR), however, "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id*. Because of the highly discretionary nature of the convening authority's action on a sentence, we grant relief if Appellant presents "some colorable showing of possible prejudice" affecting his opportunity for clemency. *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (1998)).

The National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA) substantially modified the convening authority's ability to approve findings and sentences under Article 60, UCMJ. FY14 NDAA, Pub. L. No. 113-66, §1702, 127 Stat. 956–57 (2013). A convening authority can no longer, except for only the most minor offenses, dismiss any charge or specification or change any finding of guilty to a finding of guilty to a lesser-included offense. The convening authority can also no longer "disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge" except in certain circumstances not present here. *Id*. at 956. These changes became effective on 24 June 2014 but were inapplicable to Appellant because his offenses occurred before the act's effective date. *Id*. at 958.

Despite the FY14 NDAA's inapplicability, the SJA recommended the convening authority "consider and follow Congress's new guidance, though technically not applicable, in future determinations for this case." The SJA told the convening authority that Congress' new "guidance" would have "removed your authority to disapprove the findings on his offenses or the adjudged punitive separation he received, and you would be required to provide a written explanation of the reasons for any other action taken on the adjudged sentence."

In response, trial defense counsel argued that not only did the FY14 NDAA not apply to Appellant but that applying that law to him would "arguably [be] a violation of the law itself" because Congress' decision regarding the act's effective dates was clear. Appellant asked that the convening authority grant clemency by disposing of his offenses via non-judicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, after which Appellant would resign from the service.

The SJA provided three addenda to his initial recommendation. In the first, the SJA acknowledged that Appellant's position was legally accurate, but "after reviewing the attached clemency matters submitted by the defense, and the record of trial," his "recommendation remains unchanged." The SJA did not specify whether the recommendation to which he was referring was the recommendation to approve the findings and sentence as adjudged, to apply the revised Article 60 restrictions, or both.

A second addendum, dated two weeks later, responded to the several questions posed by the convening authority. First, the convening authority asked whether Appellant's veterans' benefits would differ if he were separated administratively instead of punitively. Second, the convening authority asked for information on Appellant's duty status and medical credentials. Third, he asked for additional information on the officer resignation and separation process. Fourth, he asked whether he had the authority to set aside the dismissal while simultaneously seeking an administrative discharge. Fifth, he asked whether SN had made a statement.

A third addendum, dated two weeks after the second, responded to Appellant's challenges to several of the answers provided in the second addendum. Specifically, Appellant objected to the SJA's reference to Article 74(b), UCMJ, 10 U.S.C. § 874(b), (remission and suspension of sentences); paragraph 9.23.2 of Air Force Instruction 51-201 (convening authority's discretionary authority); and whether SN provided a statement. After addressing each of these points, the addendum concluded:

> I agree with the defense that you have full authority to set aside the conviction for either or both charges, as well as to approve, disapprove, commute or suspend the sentence in whole or in part. However, my earlier recommendation that you approve the findings and sentence as adjudged remains unchanged.

The convening authority acknowledged the SJA's advice and considered it before taking final action in the case.

Appellant only challenges that portion of the SJA's advice that suggested he should consider Congress' rationale for amending Article 60. The SJA cured

any possible error in his third addendum.[4] The convening authority was correctly advised about the law applicable to Appellant's case. It was evident based on the questions the convening authority posed that he was seriously considering whether to take some action other than approve the sentence as adjudged—questions he would have no reason to ask if he believed he had no authority to take that action. Appellant has failed to establish that the SJA erred in his legal advice to the convening authority and, even assuming error, he has failed to demonstrate a colorable showing of possible prejudice.

## III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

MICAH L. SMITH
Deputy Clerk of the Court

---

[4] In an unpublished decision in *United States v. Kester*, No. ACM 38911, 2017 CCA LEXIS 85 (A.F. Ct. Crim. App. 7 Feb. 2017), a panel of this court concluded that similar advice—offered without defense objection—did not constitute plain error under the facts of that case. Because we conclude that any possible error was corrected by the SJA's subsequent advice, we need not decide whether the initial advice constituted error.